UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────────────────────────────────────

| | |
|---|---|
| Ready 4 A Change, LLC, | File No. 18-cv-01341 (ECT/ECW) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Sourcis, Inc., d/b/a Sourcis, and Shahram Elli, a/k/a Ron Elli, | |
| Defendants. | |

───────────────────────────────────────────────────────────────

Bradley John Haddy, Minnesota Esquire, LLC, Mendota Heights, MN, for plaintiff Ready 4 A Change, LLC.

Dawn C. Van Tassel, Van Tassel Law Firm, LLC, Minneapolis, MN, for defendants Sourcis, Inc., and Shahram Elli.

───────────────────────────────────────────────────────────────

This is a lawsuit between two business organizations that once worked together. Defendant Sourcis, Inc. ("Sourcis"), a California corporation, provided website-development and search-engine-optimization services under a contract to plaintiff Ready 4 A Change, LLC ("R4AC"), a Minnesota-based business. Defendant Shahram Elli ("Elli") is Sourcis's Chief Executive Officer. R4AC alleges that the parties' business relationship went bad because Defendants breached their contract and misappropriated confidential information and intellectual property belonging to R4AC. R4AC asserts a series of exclusively state-law claims against Defendants and seeks damages greater than $500,000. Thus, the case is in federal court on the basis of diversity jurisdiction.

Defendants seek dismissal on several alternative grounds: a lack of personal jurisdiction, the passing of statutes of limitation, a failure to plead facts establishing essential elements of claims, federal preemption, and improper venue. Defendants alternatively seek transfer of venue to the United States District Court for the Eastern District of California under 28 U.S.C. § 1404(a). Because Defendants lack "minimum contacts" with Minnesota and "maintenance of the suit [in Minnesota would] offend traditional notions of fair play and substantial justice," *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citation and internal quotation marks omitted), personal jurisdiction over Defendants is lacking. The lack of personal jurisdiction warrants transferring the case to the United States District Court for the Eastern District of California.

I

R4AC is a limited liability company organized under Minnesota law and based in Minnesota. Am. Compl. ¶ 1 [ECF No. 7].[1] R4AC's sole member is Judy Dohm ("Dohm"),

---

[1] Defendants argue that R4AC's amended complaint is "without effect, given that it was filed without leave of Court or the consent of Defendants." Mem. in Supp. at 2 n.1 [ECF No. 14]. As a matter of law, this argument seems questionable. Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure says that a party may amend a pleading "to which a responsive pleading is required"—and a complaint falls in that category—once as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Defendants served their Rule 12(b) motion on October 17, 2018. ECF No. 13. Twenty-one days after October 17 was November 7. R4AC filed its amended complaint on August 7, 2018, ECF No. 7, over two months *before* Defendants served their motion under Rule 12(b). Unless one reads Rule 15(a) to require the service of a responsive pleading or one of the listed motions to trigger a party's right to amend a complaint once as a matter of course—and that seems iffy—R4AC's amended complaint was timely and proper. As a practical matter, regardless of the precise meaning and application of Rule 15 here, R4AC's amended complaint contains

and she is a Minnesota citizen, *see* Second Dohm Aff. ¶¶ 1, 6, 9 [ECF No. 32], making R4AC a Minnesota citizen. *See, e.g.*, *Cypress Creek Renewables Dev., LLC v. Sunshare, LLC*, No. 18-cv-2756 (PJS/DTS), 2018 WL 5294571, at *1 (D. Minn. Oct. 24, 2018) ("For purposes of diversity jurisdiction, a limited liability company (LLC) takes the citizenship of its members and sub-members and sub-sub-members."). R4AC provides medical-tourism services, including promoting and coordinating weight-loss and plastic-surgery procedures performed in Mexico. Am. Compl. ¶ 6; Def. Index of Exs. ("Index"), Ex. E ¶ 1 [ECF No. 17].

Sourcis provides web-development and search-engine-optimization services; it is incorporated under California law and maintains its principal place of business in Folsom, California. Am. Compl. ¶¶ 2, 7; Elli Decl. ¶ 5 [ECF No. 15]. Sourcis maintains no presence in Minnesota. It has no office, employee, or property in Minnesota; it has not worked in Minnesota; it has targeted no advertising at Minnesota customers. Elli Decl. ¶¶ 10–11. Elli, Sourcis's CEO, is a California citizen. *See* Am. Compl. ¶ 3; Elli Decl. ¶¶ 2, 5. He never has been to Minnesota. Elli Decl. ¶ 12.

R4AC contracted with Sourcis for the provision of "web development and search engine optimization services." Am. Compl. ¶¶ 8–9; *see also* Elli Decl. ¶¶ 6–9; Index, Ex. A. The parties' submissions do not align about when they began working together, and this discrepancy warrants discussion. Sourcis says it was "about March 2010." Elli Decl. ¶ 6. In support of its assertion that the parties' relationship began "about March

---

no new or materially different allegations relevant to the personal jurisdiction question. Therefore, citations in this opinion will be to the amended complaint.

2010," Sourcis filed what it alleges is a "true and correct copy of [its] form services agreement" with R4AC, Elli Decl. ¶ 8, and that document is dated March 20, 2010, Index, Ex. A.[2] Also, Elli testifies in his declaration that Dohm contacted him "[i]n or about March 2010 . . . to discuss the possibility of Sourcis performing Internet marketing services for R4AC." Elli Decl. ¶ 6.

R4AC's position on this issue is not consistent. In her first affidavit filed in this case, Dohm testifies that Sourcis's "submission of an agreement is fabricated." First Dohm Aff. ¶ 6 [ECF No. 26]. According to Dohm, the "document was created far after we had agreed to terms, did business, and was [*sic*] no longer working together." *Id.* Dohm's affidavit does not specify when Sourcis and R4AC began working together. *See generally id.* However, in a declaration Dohm filed in a separate lawsuit involving R4AC in a California state court, she testified that R4AC used a different "web development company until January 30, 2010[,] at which time Ron Elli from Sourcis was hired as a replacement to handle both our database and web development for [R4AC]." Index, Ex. E ¶ 6. An email thread filed as an exhibit to an affidavit submitted by R4AC's counsel in this above-captioned case seems to show that Dohm and Elli were engaged in initial communications concerning a business relationship and a possible contract circa March 2009. Haddy Aff. ¶ 6, Ex. 1 [ECF No. 25]. Finally, R4AC alleges in its amended complaint

---

[2] What Sourcis calls its "form services agreement" with R4AC is a single-page letter on Sourcis letterhead, addressed to Dohm and signed by Elli. *See* Index, Ex. A. The letter begins with the sentence: "I am pleased to give you the following quote for [R4AC] Internet Search Engine Marketing." *Id.* The letter says later that Sourcis would start work "upon the receipt of the down-payment for $3000." *Id.* If this one-page document is the parties' agreement—a fact R4AC disputes—it doesn't say much.

that the parties entered into an agreement "about August 2007," but cites no authority for this allegation. Am. Compl. ¶ 8. To recap then, Sourcis and Elli say the parties' relationship began in March 2010; various submissions by R4AC and Dohm say that it began around January 30, 2010 (Dohm's California declaration), or in March 2009 (the email thread attached to R4AC's counsel's affidavit), or in August 2007 (the amended complaint). No party says whether the agreement had a defined time period (*e.g.*, month-to-month, term of months, one year, etc.).

R4AC was referred to Sourcis by another Sourcis customer. Elli Decl. ¶ 7. Like Sourcis, the party who referred R4AC to Sourcis was a business located in California. *Id.* In other words, R4AC's identification of Sourcis did not result from anything Sourcis did in Minnesota, from any advertisements Sourcis may have targeted at potential customers in Minnesota, or from any Internet presence Sourcis may have maintained—or at least there is no evidence showing that happened. The services Sourcis provided to R4AC are not described precisely or comprehensively in the parties' pleadings or briefs. It seems enough to say that the services were intended to improve and increase traffic to R4AC's websites. Elli Decl. ¶ 10; Index, Ex. A; Mem. in Opp'n at 2 [ECF No. 24]. To enable Sourcis to provide its services, R4AC gave Sourcis access to some of R4AC's proprietary information including website data, databases, pricing, operation methods, business relationships, customer data, and financial data. Am. Compl. ¶¶ 8–9, 12, 17. During R4AC and Sourcis's business relationship, Dohm and Elli traveled together to Chicago to attend conferences and to Mexico to perform market research. Elli Decl. ¶ 12; First Dohm Aff. ¶¶ 7–8. Apart from those travels, Sourcis undertook all of its work on behalf of R4AC in California. Elli

Decl. ¶ 10.  R4AC acknowledges that Sourcis's work resulted in "a dramatic increase" in the online traffic for R4AC.  Mem. in Opp'n at 2.

At some point, the parties' relationship went bad.  R4AC alleges essentially that Sourcis and Elli "fraudulently converted" R4AC's proprietary information for Sourcis's own use "to directly compete with R4AC in the medical tourism industry."  Am. Compl. ¶¶ 12–15.  These allegations form the core of R4AC's claims in this case.  Elli testifies that Sourcis stopped providing services to R4AC "[a]s a result of R4AC's failure to pay."  Elli Decl. ¶ 13.  Regarding the timing of their breakdown, the parties are imprecise but relatively consistent.  Sourcis says it was "late summer of 2012."  *Id*.  R4AC does not discuss the timing of the parties' breakdown in its papers in this case, but in the declaration that Dohm filed in the California lawsuit, she described a series of events from June through October 2012 as leading to the breakdown.  Index, Ex. E ¶¶ 65–70, 80–84.  Accepting the earliest factually-supported date the parties' relationship could have begun—which would appear to be March 2009, Haddy Aff. ¶ 6, Ex. 1—the relationship lasted more than three years, but less than four.

## II

"Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (second alteration in original) (citation and internal quotation marks omitted).  "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists."  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted).  "To

successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* (citations omitted). "But where, as here, the parties submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance one for summary judgment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citation omitted). At the summary-judgment stage, a case should not be dismissed for lack of personal jurisdiction "if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Id.* (citations omitted).

For the exercise of personal jurisdiction to be proper in a diversity case, it must comport with both the forum state's long-arm statute and due process. *Id.* at 979. Because Minnesota's long-arm statute, Minn. Stat. § 543.19, is "coextensive with constitutional limits," this two-part issue boils down to one: whether the exercise of personal jurisdiction comports with due process. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). Due process requires that each defendant has sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citations and internal quotation marks omitted). This means "actions by the defendant[s]" themselves must "create a substantial connection with the forum [s]tate" and provide "fair warning" to defendants that they may be subject to jurisdiction there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985) (citations and internal quotation marks omitted); *accord, e.g.*, *Creative Calling*, 799 F.3d at 980 (defendant's contacts must permit it to "reasonably

anticipate being haled into court" in the foreign state (citation and internal quotation marks omitted)). The "fair warning" requirement will be met if defendants have "'purposefully directed' [their] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472–73 (citations omitted).

Our Eighth Circuit Court of Appeals has identified five factors that district courts are to consider in determining whether a defendant has sufficient minimum contacts with the forum state to justify a finding of personal jurisdiction: (1) the nature and quality of contacts with the forum state; (2) the quantity of those contacts; (3) the relationship between the cause of action and the contacts; (4) the state's interest in providing a forum for its residents; and (5) the convenience to the parties. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The first three factors are of primary importance, whereas the remaining two are secondary. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citation omitted). A court must consider these factors in the aggregate rather than individually. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995) (citation omitted).

Start with the third factor: the relation of the cause of action to the contacts. This factor distinguishes specific jurisdiction from general jurisdiction: specific jurisdiction exists over causes of action arising out of or related to a defendant's contacts with the forum state, whereas general jurisdiction is broader and reaches any cause of action against a defendant whose forum contacts "are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Quality Bicycle Prod., Inc. v. BikeBaron, LLC*,

No. 12-cv-2397 (RHK/TNL), 2013 WL 3465279, at *3 (D. Minn. July 10, 2013) (alterations in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Here, Defendants are indisputably not "at home" in Minnesota, making this a question of specific personal jurisdiction.

Analysis of the first two factors—the nature and quality of contacts with the forum state and the quantity of those contacts—requires consideration of the parties' contractual relationship.  "A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state."  *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 593 (8th Cir. 2011) (citing *Burger King Corp.*, 471 U.S. at 478–79).  However, a contract is ordinarily "an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."  *K–V Pharm. Co.*, 648 F.3d at 593 (quoting *Burger King Corp.*, 471 U.S. at 479).  "To determine whether a defendant purposefully established minimum contacts with the forum, [the district court] must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"  *Creative Calling*, 799 F.3d at 980 (*quoting Burger King Corp.*, 471 U.S. at 479).

Here, a fact-finder could not reasonably conclude that Sourcis or Elli established minimum contacts with Minnesota permitting the exercise of personal jurisdiction based upon the contract or course of dealing with R4AC.  Sourcis says that R4AC solicited the business relationship after being referred to Sourcis by a third-party—a Sourcis customer located in California.  Elli Decl. ¶ 7.  R4AC does not dispute this allegation.  In her

9

affidavit, Dohm testifies that she "was introduced" to Elli, First Dohm Aff. ¶ 3;[3] though she does not say who introduced them, neither Dohm nor R4AC deny Sourcis's allegation that it was a Sourcis customer located in California. There is no evidence showing that Sourcis solicited the relationship by reaching into Minnesota. The parties do not define the terms of their agreement with any clarity, but importantly no party has introduced evidence from which a reasonable fact-finder could determine that the parties' contract was binding for a defined period of time. In other words, if the parties contemplated a lengthy business relationship, one could not glean that fact from the parties' description of their agreement (or, for that matter, from any other evidence the parties have submitted).[4]

---

[3] Dohm testifies two paragraphs later in her affidavit that Elli contacted her to "solicit . . . the business for [R4AC]." First Dohm Aff. ¶ 5. This assertion does not create a genuine dispute regarding the fact that R4AC was referred to Sourcis (and not the other way around). The assertion is vague, and its precise meaning is open to question. It would have been easy for R4AC to dispute this fact by, for example, denying that it was referred to Sourcis by another Sourcis customer or describing what Sourcis did to target R4AC's business. R4AC doesn't do anything like that. The assertion also is unsupported. To support this assertion, Dohm cites "Exhibit 2," but there are no exhibits attached to Dohm's affidavit. Though there is an Exhibit 2 attached to the affidavit of R4AC's counsel, that exhibit consists of two invoices from an organization called "Spaceout Media" to R4AC and checks reflecting R4AC's payment of the two invoices. Haddy Aff. ¶ 7, Ex. 2. These documents provide no support for Dohm's assertion. Finally, it seems worth noting that the email thread attached as Exhibit 1 to R4AC's counsel's affidavit begins with an email *from Dohm to Elli* asking if he is "in a position . . . [to] take [R4AC] on as a client." *Id.* ¶ 6, Ex. 1.

[4] In its memorandum in opposition to Defendants' motion, R4AC asserts that Sourcis "'deliberately' reached out and negotiated a *long-term* agreement with a company in the forum state." Mem. in Opp'n at 5 (emphasis added) [ECF No. 24]. R4AC cites no record evidence supporting its statement that the agreement was for a "long term" (or what period of time it considers "long").

The parties' submissions establish that Sourcis performed work under the contract in California, Mexico, and Illinois. Elli Decl. ¶¶ 10, 12; First Dohm Aff. ¶¶ 7–8. There is no evidence showing that Sourcis performed any work on behalf of R4AC in Minnesota. Indeed, Elli testifies that he never has been to Minnesota, Elli Decl. ¶ 12, and R4AC has introduced no evidence to dispute this assertion. One might reasonably hypothesize that Sourcis sent communications to R4AC in Minnesota, but apart from a letter from Elli to Dohm—which Sourcis says is the contract, Index, Ex. A—and the email thread attached to the affidavit of R4AC's counsel, Haddy Aff. ¶ 6, Ex. 1, the record contains no description of communications that Sourcis or Elli may have sent to Minnesota. No doubt Sourcis sent bills to R4AC in Minnesota, and R4AC alleges that it paid Sourcis "through [its] Minnesota bank." Mem. in. Opp'n at 5. But invoices sent to the forum state, and payments for services made from the forum state, cannot themselves establish personal jurisdiction. If that were enough, then every contract for goods or services would trigger personal jurisdiction over the out-of-state party, and the Eighth Circuit has made clear that is not the law. *Creative Calling*, 799 F.3d at 980; *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) ("[W]ire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there.'" (citation omitted)). To summarize then, based upon the evidence submitted by the parties, neither the quality nor quantity of Sourcis and Elli's contacts with Minnesota under Sourcis's contract and course of dealing with R4AC could reasonably justify the exercise of personal jurisdiction over them in the District of Minnesota in this case.

The fourth and fifth factors—Minnesota's interest in providing a forum for its residents and the convenience of the parties—warrant brief discussion.  Minnesota no doubt has an interest in providing its residents with a forum for dispute resolution, but that interest is minimal when the dispute has minimal connection to the state.  *See Westley v. Mann*, 896 F. Supp. 2d 775, 792 (D. Minn. 2012).  Here, not only are Defendants' activities largely unconnected to Minnesota, so are R4AC's.  The medical tourism that R4AC arranged occurred in Mexico, and the meetings in which it participated that are described in the record occurred outside of Minnesota.  Under these circumstances, Minnesota's interest in providing a forum for R4AC is not substantial.  Apart from the inconvenience that always seems associated with litigating in a distant forum, no party has identified a particular fact or set of facts tipping this factor in its favor.  Perhaps most importantly, even if convenience could justify looking past the absence of minimum contacts (and that seems dubious), R4AC has not identified any convenience-related reason that might justify allowing this case to proceed in the District of Minnesota.

When a federal district court determines it lacks personal jurisdiction over defendants and the "plaintiff seriously intends to press [its] claim," the result should be an order transferring the case to an appropriate judicial district rather than outright dismissal. *Thompson v. Ecological Sci. Corp.*, 421 F.2d 467, 470 n.4 (8th Cir. 1970); *see also Am. Registry of Radiologic Technologists v. Bennett*, 655 F. Supp. 2d 944, 946 (D. Minn. 2009) ("Although the Court lacks personal jurisdiction over Defendants, it may transfer this action to any other district in which it could have been brought, if justice so requires."); *Turner v. Werner Enters., Inc.*, No. 8:09CV130, 2009 WL 2358348, at *2 (D. Neb. July

23, 2009). Here, R4AC gives no reason to think it is not serious about pressing its claims, and transfer would seem more conducive to the speedy, inexpensive determination of this action than dismissal. *See* Fed. R. Civ. P. 1.

In their motion and briefs, Sourcis and Elli request transfer of this action to two different judicial districts: the Northern District of California and the Eastern District of California. *Compare* Mot. At 1 [ECF No. 13] (requesting transfer to Northern District); Reply at 5 [ECF No. 29] (Northern District) *with* Reply at 4 (Eastern District); Mem. in Supp. at 2, 24, 27 (Eastern District) [ECF No. 14]. At the hearing on these motions, Defendants clarified that they seek transfer to the Eastern District of California. That makes sense. As mentioned earlier, Sourcis maintains its principal place of business in Folsom, California, and Folsom lies within the Eastern District. It also seems worth mentioning that R4AC was party to litigation in California state court, Sacramento County, *see* Index, Exs. D–F, H–I, and Sacramento County also lies in the Eastern District.

## ORDER

Based upon all of the files, records, and proceedings in the above-captioned matter, and having determined that the Court lacks personal jurisdiction over defendants Sourcis, Inc. and Shahram Elli, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss or transfer venue [ECF No. 13] is granted in part and denied in part as follows:

1. Insofar as the motion seeks to transfer venue, it is **GRANTED**, and the Clerk is directed to transfer this matter to the United States District Court for the Eastern District of California; and

2. Insofar as the motion seeks dismissal, it is **DENIED WITHOUT PREJUDICE** as moot.

Dated: January 17, 2019                    s/ Eric C. Tostrud
                                           Eric C. Tostrud
                                           United States District Court