UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| READY 4 A CHANGE, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>SOURCIS, INC., a California corporation d/b/a Sourcis; and SHAHRAM ELLI, a/k/a Ron Elli,<br><br>        Defendants. | No. 2:19-cv-143 WBS EFB<br><br>MEMORANDUM & ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT |

----oo0oo----

Plaintiff Ready 4 A Change, LLC ("R4AC") brings this action against defendants Sourcis, Inc. ("Sourcis") and Sharam Elli, alleging that defendants breached an agreement between the parties and misappropriated plaintiff's confidential information and intellectual property. R4AC asserts seven different causes of action against defendants all under state law. Defendants move to dismiss plaintiff's First Amended Complaint ("FAC")[1].

---

[1] Plaintiff has docket entries titled Complaint (Docket No. 1.), Amended Complaint (Docket No. 7), and Second Amended

1

I. <u>Factual and Procedural Background</u>

Plaintiff R4AC is a limited liability company organized under Minnesota law and based in Minnesota. (FAC ¶ 1 (Docket No. 41).) R4AC was formed in August 2003 to provide medical tourism services to individuals seeking medical care outside of the United States. (<u>Id.</u> ¶ 6.) Defendant Sourcis is a corporation organized under California law and based in California. (<u>Id.</u> ¶ 2.) Sourcis provides web development and search engine optimization services. (<u>Id.</u> ¶ 7.) Defendant Shahram Elli is a resident of California and an officer, director, and shareholder of Sourcis. (<u>Id.</u> ¶ 3.)

R4AC alleges that in August 2007[2] it contracted with Sourcis for the provision of web development and search optimization services. (<u>Id.</u> ¶ 8.) R4AC claims that pursuant to this agreement, Sourcis required R4AC to provide defendants with certain intellectual property, including R4AC's databases, domains, and websites. (<u>Id.</u> ¶ 9.) R4AC alleges that defendants then fraudulently converted plaintiff's intellectual property to directly compete with R4AC in the medical tourism industry. (<u>Id.</u> ¶ 13.) Plaintiff believes that defendants used R4AC's copywritten photographs, advertisements, scripts, website language, marketing ideas, and other proprietary information to

---

Complaint (Docket No. 41). The document attached to the Second Amended Complaint docket entry is a "First Amended Complaint." Because all parties refer to this now operative complaint as the FAC, the court will adopt that naming.

[2] While Judy Dohm, the co-founder of R4AC, states that defendants were hired in 2010 (Decl. of Judy Dohm ("Dohm Decl.") ¶ 6 (Docket No. 47).), the court, for the purposes of this motion, takes the allegations in the complaint as true.

2

establish a competing business. (Id. ¶ 14.) R4AC alleges that these actions breached the agreement between the two companies. (Id. ¶ 19.)

Plaintiff filed its original complaint against defendants in the United States District Court for the District of Minnesota on May 16, 2018. (Docket No. 1.) A few months later, plaintiff filed its amended complaint. (Docket No. 7.) On October 17, 2018, defendants moved to dismiss that complaint or transfer venue to this district. (Docket No. 13.) After holding a hearing on the motion, Judge Eric Tostrud of the District of Minnesota determined that his court lacked personal jurisdiction over defendants and ordered that the matter be transferred to the Eastern District of California. (Docket No. 33.) After the matter was transferred to this district, plaintiff filed the FAC on February 26, 2019, alleging the following causes of action: (1) breach of contract; (2) unjust enrichment; (3) intentional inference with contractual relationship; (4) interference with prospective business advantage; (5) civil conspiracy; (6) conversion; and (7) breach of fiduciary duty. Defendants now move to dismiss the FAC. (Docket No. 42.)

II. Motion to Dismiss

A. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" will not survive a motion to dismiss. Id. (internal quotation marks and citations omitted).

    B.   Statute of Limitations

        1.   Choice of Law

Before proceeding to the substance of defendants' statute of limitations argument, this court must determine whether California or Minnesota law applies. Both parties agree that this is a diversity action because (1) all claims arise under state law, (2) there is complete diversity of citizenship, and (3) the amount in controversy exceeds $75,000. (See Mem. in Supp. of Mot. to Dismiss at 6 (Docket No. 44); Opp'n to Mot. to Dismiss at 8 (Docket No. 46).)

To determine the applicable substantive law, a federal court sitting in diversity typically applies the choice-of-law rules of the forum in which it sits. See Narayan v. EGL, Inc., 616 F.3d 895, 898 (9th Cir. 2010) (citation omitted). The court observes that defendants sought to transfer this case from the District of Minnesota to the Eastern District of California under 28 U.S.C. § 1404(a). (Mot. to Dismiss or Transfer Venue at 1.) Normally, when a diversity action is transferred pursuant to Section 1404(a), the transferee district applies the choice-of-law rules of the original forum state. See Van Dusen v. Barrack,

376 U.S. 612, 642-43 (1964).

Here, Judge Tostrud found that the District of Minnesota lacked personal jurisdiction over defendants and transferred the case to the Eastern District of California, a place where this action could have been brought. (Mem., Op., and Order at 12-13.) Therefore, this court finds that this transfer occurred under 28 U.S.C. § 1406(a). See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); see also Muldoon v. Tropitone Furniture Co., 1 F.3d 964, 967 (9th Cir. 1993) (observing that transfers for lack of personal jurisdiction occur under Section 1406(a)). For transfers under Section 1406(a), the Ninth Circuit has held that courts "look to the law of the transferee state, also to prevent forum shopping, and to deny plaintiffs choice-of-law advantages to which they would not have been entitled in the proper forum." See Nelson v. Int'l Paint Co., 716 F.2d 640, 643 (9th Cir. 1983) (citations omitted). Consequently, California choice-of-law rules apply.

While choice-of-law analysis is often a fact-specific inquiry, this court can perform this analysis on a motion to dismiss where further development of the factual record is not likely to impact the final determination. See Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014). Neither party indicates that further factual development is necessary to resolve the choice-of-law inquiry as to the statute of limitations issue and the court agrees.

1    "Where the contract contains no choice of law provision
2    and the case does not present an issue of contract
3    interpretation, California courts apply the governmental interest
4    test to determine which state's law should apply."[3] Columbia
5    Cas. Co. v. Gordon Trucking, Inc., 758 F. Supp. 2d 909, 915 (N.D.
6    Cal. 2010) (citing Wash. Mut. Bank, FA v. Superior Court, 24 Cal.
7    4th 906, 919 (2001)); see also Ledesma v. Jack Stewart Produce,
8    Inc., 816 F.2d 482, 484 n.2 (9th Cir. 1987) (holding that courts
9    should apply the governmental interest analysis to statutes of
10   limitations). Under the governmental interest analysis, a court
11   engages in a three-step process to determine if another state's
12   law governs an issue brought in a California court. Pokorny v.
13   Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010) (citing Wash
14   Mut. Bank, 24 Cal. 4th at 919). First, the court determines
15   whether the relevant law of each jurisdiction is the same or
16   different regarding the particular issue. Kearney v. Salomon
17   Smith Barney, Inc., 39 Cal. 4th 95, 107 (2006). Second, if there
18   is a difference, the court determines if a conflict exists by
19   examining the interest of each jurisdiction in the application of
20   its law. Id. at 107-08. Third, if there is a conflict, the
21   court evaluates the relative interests of each jurisdiction in
22   the application of its own law to determine which state's

---

[3] Defendants argue that California Civil Code § 1646 governs the choice-of-law analysis here. However, California courts have made clear that the application of Section 1646 is limited to issues of contract interpretation. See, e.g., Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1459 (3d Dist. 2007) (explaining that California Civil Code § 1646 applies exclusively to issues of contract interpretation). The determination of the appropriate statutes of limitations does not involve interpreting the agreement at issue in this case.

interest would be more impaired if its law were not applied and then apply that state's law. Id. at 108.

First, the court must determine whether the states' statutes of limitations are different. Breach of written contract claims have a four-year limitations period in California and a six-year limitations period in Minnesota. Compare Cal. Civ. Proc. Code § 337 with Minn. Stat. Ann. § 541.05(1). Unjust enrichment claims on the grounds of fraud have a three-year statute of limitations period in California and a six-year limitations period in Minnesota. Compare Cal. Civ. Proc. Code § 338(d) with Minn. Stat. Ann. § 541.05(1) & (6). A claim for tortious interference with contract has a two-year limitations period in California compared to a six-year limitations period in Minnesota. Compare Cal. Civ. Proc. Code § 339(1); Kiang v. Strycula, 231 Cal. App. 2d 809, 811 (1st Dist. 1965) with Minn. Stat. Ann. § 541.05(1); Wallin v. Minn. Dep't of Corr., 598 N.W.2d 393, 401 (Minn. Ct. App. 1999). Interference with prospective business advantage is subject to a two-year limitations period in California and a six-year limitations period in Minnesota. Compare Cal. Civ. Proc. Code § 339(1); Knoell v. Petrovich, 76 Cal. App. 4th 164 (2d Dist. 1999) with Minn. Stat. Ann. § 541.05; Wild v. Rarig, 302 Minn. 419, 446 (1975).

Under California law, the statute of limitations for a civil conspiracy claim "is determined by the [n]ature of the action in which the conspiracy is alleged." Kenworthy v. Brown, 248 Cal. App. 2d 298, 301 (3d Dist. 1967). Because plaintiff alleges that the conspiracy occurred "to deprive R4AC of its

7

prospective business advantages" (FAC ¶ 41), the statute of limitations under California law is two years. See Cal. Civ. Proc. Code § 339(1). Under Minnesota law, because a civil conspiracy claim must be supported by an underlying tort, see D.A.B. v. Brown, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997), the court assumes that this claim borrows the underlying tort's statute of limitations, which in this case is six years, see Minn. Stat. Ann. § 541.05. A claim for conversion has a statute of limitations period of three years in California and six years in Minnesota. Compare Cal. Civ. Proc. Code § 338(c)(1) with Minn. Stat. Ann. § 541.05(4). Finally, under California law, "[t]he statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent." Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1479 (2d Dist. 2014). Under Minnesota law, "breach of fiduciary duty claims are governed by a six-year statute of limitations." Hope v. Klabal, 457 F.3d 784, 790 (8th Cir. 2006) (citing Minn. Stat. Ann. § 541.05(1) & (6)). In sum, for every one of plaintiff's claims, California and Minnesota law differs.

Second, the court must determine if both states have an interest in applying their statutes of limitations. Statutes of limitations serve two purposes: (1) they protect state residents from the burden of defending cases where "memories have faded" and "evidence has been lost" and (2) they protect the courts of the state from the need to process stale claims. See Ledesma, 816 F.2d at 485 (quoting Ashland Chem. Co. v. Provence, 129 Cal. App. 3d 790, 794 (4th Dist. 1982)). Given these interests, the

8

relevant inquiry focuses on the residence of defendants and the forum. Ashland, 129 Cal. App. 3d at 794. Where "the forum is in California" and "the only defendant[s] [are] California resident[s]," "[o]nly California has an interest in having its statute of limitations applied." Nelson, 716 F.2d at 645. By contrast, none of Minnesota's interests are implicated because there are no Minnesota defendants to this suit and Minnesota is no longer the forum for this action. See Ashland, 129 Cal. App. 3d at 794. Thus, the conflict between Minnesota and California statute of limitations law is false and the court need not go beyond the second step of the governmental interest test. See Nelson, 716 F.2d at 644-45 (declining to proceed beyond step two after determining that the conflict in state law was false).

Accordingly, the court will apply California's statutes of limitations to plaintiff's claims.

### 2. Application of the Statutes of Limitations

The statute of limitations period "runs from the moment a claim accrues." Aryeh v. Canon Bus. Sols., Inc., 55 Cal. 4th 1185, 1191 (2013). Traditionally, a cause of action accrues when it is complete with all of its elements. See Norgart v. Upjohn Co., 21 Cal. 4th 383, 389 (1999); see also Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal. 3d 176, 187 (1971) ("In ordinary tort and contract actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action.").

Here, plaintiff concedes that the alleged offending conduct concluded by the end of 2012 at the latest. (See Opp'n to Mot. to Dismiss at 6-7.) In her declaration, which was submitted

9

by plaintiff, Judy Dohm states that the contractual relationship between the parties ended in 2012, as they were then involved in related litigation. (See Dohm Decl. ¶¶ 17-19.)[4] Therefore, plaintiff admits that the relevant accrual date for its causes of action is some time at the end of 2012. Plaintiff commenced this lawsuit almost five and a half years later in May 2018. Accordingly, a strict application of the relevant statutes of limitations would bar every single one of plaintiff's claims. As shown previously, each cause of action has a statute of limitations of less than five years.

Plaintiff argues, however, that it is entitled to equitable tolling. Equitable tolling is a judicially created doctrine that suspends or extends the statute of limitations period. See McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 99 (2008). It is designed to prevent unjust forfeitures of a right to trial when there has been timely notice to defendants of plaintiff's claims. Id. California's equitable tolling doctrine applies, inter alia, "when an injured person has several legal remedies and, reasonably and in good faith, pursues one." Elkins v. Derby, 12 Cal. 3d 410, 414 (1974). Its application in such circumstances is meant to ease pressures on parties seeking redress in multiple forums and to encourage

---

[4] The court considers undisputed facts included in this declaration as judicial admissions made by plaintiff. See Gospel Missions of Am. v. City of Los Angeles, 328 F.3d 548, 557 (9th Cir. 2003); see also Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 14-cv-1645 DOC RNBX, 2015 WL 13310465, at *3 (C.D. Cal. Jan. 22, 2015), aff'd, 677 F. App'x 336 (9th Cir. 2017) (determining that facts included in a declaration submitted by a plaintiff are judicial admissions that may be considered on a motion to dismiss).

parties to pursue informal remedies.  See McDonald, 45 Cal. 4th at 100.  Equitable tolling typically has three requirements: (1) timely notice to defendants; (2) lack of prejudice to defendants; and (3) reasonable and good faith conduct on the part of the plaintiff.  See Addison v. State of California, 21 Cal. 3d 313, 319 (1978).

In its written opposition to the motion, plaintiff contends that it is entitled to equitable tolling while it "was involved in intensive five-year litigation with Bravo Development LLC, its former business partner" from 2012 to 2017.  (Opp'n to Mot. to Dismiss at 5.)  Plaintiff argues that it did not have the time nor financial resources to bring this action while defending against other lawsuits.  (See Dohm Decl. ¶¶ 19-20.)  Dohm puzzlingly confesses, however, that "[a]fter learning that Bravo and Sourcis cross-sued one another, it was to my benefit to keep them fighting each other instead of joining together to fight me."  (Id. ¶ 21.)  And that she made a "legal decision . . . to wait to sue [defendants] under Minnesota law."  (Id. ¶ 19.)

That litigation does not appear to involve any claims against defendants in this action.  While that case may be relevant to this action, plaintiff concedes its "claims against [] Elli were separate from the claims in the lawsuit by Bravo." (Dohm Decl. ¶ 21.)  Plaintiff cites no authority, and the court is unaware of any, holding that defending a suit against an unrelated party tolls the statute of limitations for plaintiff's own claims.  Moreover, plaintiff's decision to wait and file suit partly stems from its own legal and strategic choices (see Dohm Decl. ¶¶ 19-21).  If such gamesmanship justified equitable

11

relief, the goals served by statutes of limitations "would be substantially undermined." See J.M. v. Huntington Beach Union High School District, 2 Cal. 5th 648, 658 (2017) (holding that excusing oversight such rules would subvert the goal of timely notice).

For the first time at oral argument, plaintiff's counsel came up with another theory to invoke equitable tolling, arguing that a prior lawsuit which defendants brought against plaintiff should entitle plaintiff to equitable tolling. While it is plausible that this prior action dealt with the same issues as this lawsuit, the FAC does not even mention this prior litigation, let alone allege the details of the lawsuit that would support equitable tolling. Thus, this prior lawsuit is not a proper basis for equitable tolling as to the FAC.

Accordingly, because plaintiff is not entitled to equitable tolling on the facts alleged in the complaint and its claims are otherwise barred by the relevant statutes of limitations, the court will dismiss all of plaintiff's claims.[5] The court will grant plaintiff leave to amend to allege all facts it now contends entitle it to equitable tolling.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss First Amended Complaint (Docket No. 42) be, and the same hereby is, GRANTED.[6]

Plaintiff has twenty days from the date this Order is

---

[5] Because the court dismisses plaintiff's complaint on statute of limitations grounds, it does not address the other arguments put forth in defendants' motion to dismiss.

[6] The parties' requests for judicial notice (Docket Nos. 43 & 48) are DENIED as MOOT.

12

signed to file a Second Amended Complaint, if it can do so consistent with this Order.

Dated: May 8, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

g